

14 CV 3015

JUDGE PAULEY

PREET BHARARA
United States Attorney for the
Southern District of New York
By: MICAH W.J. SMITH
    PAUL M. MONTELEONI
Assistant United States Attorneys
One Saint Andrew's Plaza
New York, New York 10007
Telephone: (212) 637-2439/2219
Facsimile: (212) 637-0421
E-mail:   micah.smith@usdoj.gov
          paul.monteleoni@usdoj.gov

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

| | |
|---|---|
| UNITED STATES OF AMERICA, : | |
| : | |
| Plaintiff, : | **VERIFIED COMPLAINT** |
| : | |
| - against - : | No. 14 Civ. |
| : | |
| $3,525,880.64 IN FUNDS ON : | ECF Case |
| DEPOSIT IN U.S. INTERBANK : | |
| ACCOUNT NUMBER ENDING IN 8077 : | |
| AT CITIBANK HELD IN THE NAME OF : | |
| THE SHANGHAI PUDONG DEVELOPMENT : | |
| BANK; : | |

$3,525,880.64 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 8077 AT CITIBANK HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK;

$2,073,850.69 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 6001 AT STANDARD CHARTERED BANK (FORMERLY ACCOUNT NUMBER ENDING IN 5051 AT AMERICAN EXPRESS BANK) HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK;

$704,212.36 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 6390 AT J.P. MORGAN CHASE BANK HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK;

RECEIVED
APR 29 2014
U.S.D.C. S.D. N.Y.
CASHIERS

$159,601.63 IN FUNDS ON DEPOSIT       :
IN U.S. INTERBANK ACCOUNT             :
NUMBER ENDING IN 1877 AT WELLS        :
FARGO (FORMERLY ACCOUNT NUMBER        :
ENDING IN 1877 AT WACHOVIA            :
BANK) HELD IN THE NAME OF THE         :
SHANGHAI PUDONG DEVELOPMENT           :
BANK;                                 :
                                      :
$31,896.00 IN FUNDS ON DEPOSIT        :
IN U.S. INTERBANK ACCOUNT             :
NUMBER ENDING IN 0173 AT BANK         :
OF AMERICA HELD IN THE NAME OF        :
THE SHANGHAI PUDONG DEVELOPMENT       :
BANK; and                            :
                                      :
$400,000.00 IN FUNDS ON DEPOSIT       :
IN U.S. INTERBANK ACCOUNT             :
NUMBER ENDING IN 0012-000-001         :
AT BANK OF CHINA NEW YORK IN          :
HELD IN THE NAME OF BANK OF           :
CHINA;                                :
                                      :
and all property traceable            :
thereto,                              :
                                      :
          Defendants in Rem.          :
                                      :
_____     :

    Plaintiff the United States of America (the "Government"), by its attorney Preet Bharara, United States Attorney for the Southern District of New York, for its verified complaint (the "Complaint") alleges, upon information and belief, as follows:

## INTRODUCTION

    1.    This action is brought by the Government pursuant to 18 U.S.C. §§ 981(a)(1)(A) and 981(a)(1)(C) seeking the forfeiture of certain funds as property involved in money laundering and as proceeds of violations of the United States

sanctions laws and regulations and of the United States laws against wire fraud and bank fraud.

2.   The Government's claims arise out of a scheme by LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," a national of China, to evade United States sanctions laws and regulations, and to commit fraud and money laundering, by supplying various metallurgical goods and related components to Iran, and laundering the proceeds of these sales, through a number of front companies.

3.   By this Complaint, the Government seeks forfeiture of all right, title and interest in the following property:

> (a) $3,525,880.64 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 8077 AT CITIBANK HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK (the "CITIBANK U.S. FUNDS");

> (b) $2,073,850.69 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 6001 AT STANDARD CHARTERED BANK (FORMERLY ACCOUNT NUMBER ENDING IN 5051 AT AMERICAN EXPRESS BANK) HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK (the "STANDARD CHARTERED BANK U.S. FUNDS");

> (c) $704,212.36 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 6390 AT J.P. MORGAN CHASE BANK HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK (the "J.P. MORGAN CHASE BANK U.S. FUNDS");

(d) $159,601.63 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 1877 AT WELLS FARGO (FORMERLY ACCOUNT NUMBER ENDING IN 1877 AT WACHOVIA BANK) HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK (the "WELLS FARGO U.S. FUNDS");

(e) $31,896.00 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 0173 AT BANK OF AMERICA HELD IN THE NAME OF THE SHANGHAI PUDONG DEVELOPMENT BANK (the "BANK OF AMERICA U.S. FUNDS"); and

(f) $400,000.00 IN FUNDS ON DEPOSIT IN U.S. INTERBANK ACCOUNT NUMBER ENDING IN 0012-000-001 AT BANK OF CHINA NEW YORK IN HELD IN THE NAME OF BANK OF CHINA (the "BANK OF CHINA NEW YORK U.S. FUNDS");

and all property traceable thereto,

(the "Defendants in Rem").

## JURISDICTION AND VENUE

4. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1345 and 1355(a). The Defendants in Rem are in the custody of the Government pursuant to seizure warrants.

5. Venue is proper pursuant to 28 U.S.C. § 1355(b)(1)(A) because acts and omissions giving rise to the forfeiture took place in the Southern District of New York.

## FACTUAL ALLEGATIONS

6. LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," is a

4

national of the People's Republic of China.  LI FANGWEI controls

a large network of industrial companies based in eastern China,

one of which is LIMMT Economic and Trade Company, Ltd.

("LIMMT").

7.    Over the years, LI FANGWEI's companies have done a

great deal of business with Iran. This business has included

selling to Iranian entities various metallurgical goods and

related components that are banned for transfer to Iran by,

among others, the United Nations because the items are

controlled by the Nuclear Supplier's Group (a multinational

group that maintains "control lists," which identify nuclear-

related dual-use equipment, material, and technology). LI

FANGWEI has been, among other things, a long-time supplier to

Iran's Defense Industries Organization and Iran's Aerospace

Industries Organization. In addition, LI FANGWEI has been a

principal contributor to Iran's ballistic missile program,

through entities that have been sanctioned by the United States.

8.    In light of his supply of closely controlled items to

Iran, the United States has imposed targeted sanctions on both

LI FANGWEI and LIMMT.  The United States Department of the

Treasury's Office of Foreign Asset Controls ("OFAC") publicly

added LIMMT (in 2006) and LI FANGWEI (in 2009) to its List of

Specially Designated Nationals and Blocked Persons (the "SDN

List"). By virtue of their inclusion on the SDN List, LI FANGWEI

and LIMMT were effectively precluded from conducting any business within the United States without first obtaining a license or authorization from OFAC. Neither LI FANGWEI nor LIMMT has sought such a license or authorization.

9.   On or about April 28, 2014, a grand jury sitting in the Southern District of New York returned Indictment S1 14 Cr. 144 (the "Indictment"), charging LI FANGWEI with conspiring to violate, and violating, the United States sanctions laws and regulations, conspiring to commit money laundering, conspiring to commit wire and bank fraud, and committing wire fraud.  The Indictment is attached hereto as Attachment A and is incorporated herein by reference.

**A. The OFAC Sanctions**

10.   The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1706, authorized the President of the United States to impose economic sanctions in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

11.   On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes an

unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

12. Thereafter, on June 28, 2005, the President issued Executive Order 13382 to target proliferators of weapons of mass destruction ("WMDs") and their support networks and deny designated WMD proliferators access to the United States financial and commercial systems. Pursuant to that authority, the Secretary of Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" (the "WMD Sanctions Regulations"), 31 C.F.R. § 544.201 et seq., which authorized OFAC to sanction individuals and entities facilitating the proliferation of WMDs by placing such individuals or entities on the SDN List, 31 C.F.R. § 544.201(a)(2).

13. The WMD Sanctions Regulations prohibited transactions or dealings by any United States person or within the United States with individuals and entities who have been placed on the SDN list, except as authorized or licensed by OFAC, 31 C.F.R. § 544.201(b). The WMD Sanctions Regulations also prohibited any transaction by a United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in the WMD Sanctions Regulations, 31 C.F.R. § 544.205. Similarly, the WMD Sanctions

Regulations and the SDN listing have the effect of preventing United States persons from providing any financial or other services to a person or entity on the SDN List, pursuant to 31 C.F.R. § 544.405.

14. In addition to the WMD Sanctions Regulations, on March 15, 1995, the President issued Executive Order 12957 finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Pursuant to that executive order, which was expanded and continued by Executive Orders 12959, 13059, 13553, and 13357, OFAC has issued the Iranian Transactions and Sanctions Regulations ("ITSR," and collectively with the WMD Sanctions Regulations the "OFAC Sanctions"), 31 C.F.R. § 560, which, among other things, prohibit the use of United States financial institutions to facilitate transactions with and/or provide services to Iran-based entities.

**B. LI FANGWEI's Use of Front Companies to Deal Covertly with Iranian Entities**

15. As set forth in the Indictment, for many years LI FANGWEI's companies openly conducted business with several Iran-based entities, but after the United State publicly sanctioned LI FANGWEI and LIMMT, LI FANGWEI essentially has gone

underground – continuing to deal with Iran, but now not directly through LIMMT, but rather through a wide variety of front companies.  These front companies are listed in Exhibit A to the Indictment.  *See* Att. A. Ex. A.  As shown in that exhibit, many of those front companies have used the same address as LIMMT, or a close variant thereof.

16.  For example, during late 2011, after visiting a manufacturing plant in China (the "Chinese Manufacturer") with several Iranians, LI FANGWEI entered into a contract in which the Chinese Manufacturer agreed to provide a production line for aramid fiber -- a fiber used in, among other things, ballistic missiles and gas centrifuges used in uranium enrichment -- to one of LI FANGWEI's front companies, Dalian Zenghua Trading Co., Ltd.  LI FANGWEI then arranged for the transport of this production line to an Iran-based company.  *See* Att. A ¶ 17.

17.  Similarly, from December 2010 up to and including February 2013, LI FANGWEI used two separate front companies, Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation and Dalian Zhongchuang Char-White Co., Ltd., to send at least 23 separate shipments to Iran, and used additional front companies, including Ara Steel Mills Company, TA Industry Co., and Abo Trading Co., Ltd., to issue invoices related to such shipments. Att. A ¶ 18.

18.  Additionally, LI FANGWEI used front companies to send

invoices to Iranian procurement agents or companies for items such as cold-drawn seamless steel pipes, aluminum alloy tubes, and special high-strength steel rods that can be used in the development of gas centrifuges.  Att. A ¶ 19.

### C. LI FANGWEI's Use of Front Companies to Funnel Commercial Transactions Covertly—and Illegally—Through United States Financial Institutions

19.  As set forth in the Indictment, the OFAC Sanctions have made it difficult for LI FANGWEI to do business with international suppliers and customers through his principal company, LIMMT, especially because contracts specifying payments to be made in U.S. currency are ordinarily "cleared" through interbank accounts in the United States, and OFAC's designation of LIMMT and LI FANGWEI -- and ultimately several of his front companies as well -- prohibited LI FANGWEI from making use of the United States financial system.  *See* Att. A ¶¶ 20-21.

20.  To evade this limitation, LI FANGWEI turned to front companies to conceal the role of LI FANGWEI or LIMMT in any given transaction.  *See* Att. A ¶¶ 22-28.  In doing so, he caused wire transfers to be made from Iranian entities, through U.S. financial institutions, to entities and bank accounts he controlled in China.  Multiple such wire transfers passed through U.S. financial institutions located in New York, New York.  *See* Att. A. ¶¶ 28, 43 & Ex. B.

**D. The Defendants in Rem and Section 981(k)**

21.  Sources such as invoices, emails, wire transfer records, company records, and others, reveal that bank accounts held on behalf of LI FANGWEI and/or LI FANGWEI front companies have received $6,895,459.32 in transactions conducted through interbank accounts at financial institutions in the United States or directed by United States financial institutions between in and about January 2007 and in or about November 2013, as follows:

  a. Bank accounts held on behalf of LI FANGWEI and/or LI FANGWEI front companies at Shanghai Pudong Development Bank, located in China, received $3,525,880.64 through U.S. interbank account number ending in 8077 at Citibank held in the name of the Shanghai Pudong Development Bank (the "Citibank-Routed China Funds").

  b. Bank accounts held on behalf of LI FANGWEI and/or LI FANGWEI front companies at Shanghai Pudong Development Bank, located in China, received $2,073,850.69 through U.S. interbank account number ending in 6001 at Standard Chartered Bank (formerly account number ending in 5051 at American Express Bank) held in the name of the Shanghai Pudong Development Bank (the "Standard Chartered Bank-Routed China Funds").

  c. Bank accounts held on behalf of LI FANGWEI and/or LI FANGWEI front companies at Shanghai Pudong Development Bank, located in China, received $704,212.36 through U.S. interbank account number ending in 6390 at J.P. Morgan Chase Bank held in the name of the Shanghai Pudong Development Bank (the "J.P. Morgan Chase Bank-Routed China Funds").

  d. Bank accounts held on behalf of LI FANGWEI and/or LI FANGWEI front companies at Shanghai Pudong

Development Bank, located in China, received
$159,601.63 through U.S. interbank account number
ending in 1877 at Wells Fargo (formerly account
number ending in 1877 at Wachovia Bank) held in
the name of the Shanghai Pudong Development Bank
(the "Wells Fargo-Routed China Funds").

e.  Bank accounts held on behalf of LI FANGWEI and/or
LI FANGWEI front companies at Shanghai Pudong
Development Bank, located in China, received
$31,896.00 through U.S. interbank account number
ending in 0173 at Bank of America held in the
name of the Shanghai Pudong Development Bank (the
"Bank of America-Routed China Funds").

f.  A bank account held on behalf of LI FANGWEI
and/or LI FANGWEI front companies at Bank of
China, located in China, received $400,000.00 at
the direction of a bank located in the Southern
District of New York ("Domestic Bank-1") through
an account at Bank of China in the name of
Domestic Bank-1 (the "Bank of China-Routed China
Funds").  U.S. Interbank account number ending in
0012-000-001 at Bank of China New York is an
interbank account held in the name of Bank of
China.

22.  Citibank, Standard Chartered Bank, J.P. Morgan Chase

Bank, Wells Fargo, Bank of America, and Bank of China New York

are "covered financial institutions" as defined in 31 U.S.C. §

5318(j)(1) and 31 U.S.C. § 5312(a)(2).  Shanghai Pudong

Development Bank and Bank of China are foreign financial

institutions as defined in 12 U.S.C. § 3101(7).

23.  Under 18 U.S.C. § 981(k), if funds subject to

forfeiture are deposited into an account at a foreign bank, and

that foreign bank has an interbank account in the United States

with a covered financial institution (as defined in 31 U.S.C. §

5318(j)(1)), the funds subject to forfeiture are deemed to have been deposited into that foreign bank's interbank account in the United States, and any restraining order, seizure warrant, or arrest warrant in rem regarding the funds may be served on the covered financial institution.

24.   In addition, Section 981(k) provides that funds in the U.S. interbank account, up to the value of the funds held in the account at the foreign bank, may be restrained, seized, or arrested.  The funds in the U.S. interbank account effectively serve as stand-in funds for the forfeitable funds being held abroad.  *See* 18 U.S.C. § 981(k)(2) (providing that to establish forfeitability of funds held in a U.S. interbank account under Section 981(k), "it shall not be necessary for the Government to establish that the funds are directly traceable to the funds that were deposited into the foreign financial institution").

25.   Accordingly, the Defendants in Rem stand in for the forfeitable property held in foreign financial institutions, as follows:

    a.   The CITIBANK U.S. FUNDS stand in for the Citibank-Routed China Funds.

    b.   The STANDARD CHARTERED BANK U.S. FUNDS stand in for the Standard Chartered Bank-Routed China Funds.

    c.   The J.P. MORGAN CHASE BANK U.S. FUNDS stand in for the J.P. Morgan Chase Bank-Routed China Funds.

d.   The WELLS FARGO U.S. FUNDS stand in for the Wells Fargo-Routed China Funds.

e.   The BANK OF AMERICA U.S. FUNDS stand in for the Bank of America-Routed China Funds.

f.   The BANK OF CHINA NEW YORK U.S. FUNDS stand in for the Bank of China-Routed China Funds.

### FIRST CLAIM
### (FORFEITURE AS PROCEEDS OF IEEPA OFFENSES UNDER 18 U.S.C. § 981(a)(1)(C))

26.   The Government incorporates by reference paragraphs 1 through 25 above as if fully set forth herein.

27.   18 U.S.C. § 981(a)(1)(C) subjects to forfeiture:

[a]ny property, real or personal, which constitutes or is derived from proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in section 1956(c)(7) of this title), or a conspiracy to commit such offense.

28.   18 U.S.C. § 1956(c)(7)(D) provides that the term "specified unlawful activity" includes "a felony violation of . . . section 206 (relating to penalties) of the International Emergency Economic Powers Act."

29.   Section 206 of IEEPA, codified at 50 U.S.C. § 1705, provides that "It shall be unlawful for a person to violate, attempt to violate, conspire to violate, or cause a violation of any license, order, regulation, or prohibition issued under this chapter."

30.   As set forth in the Indictment, LI FANGWEI violated and conspired to violate IEEPA and the OFAC Sanctions

Regulations when, among other things, he used aliases and fictitious business names to conceal the beneficiaries of electronic wire transfers of funds that passed through bank accounts in the United States, knowing that such beneficiaries had been identified as Specially Designated Nationals by OFAC, and caused electronic wire transfers of funds through United States financial institutions to facilitate the provision of goods and services to customers located in Iran, without obtaining the required approval of OFAC, including the wire transfers described in paragraph 21, above.

31.   Accordingly, the Defendants in Rem are forfeitable under 18 U.S.C. § 981(a)(1)(C) as property constituting proceeds traceable to felony violations of 50 U.S.C. § 1705 or conspiracies to commit such offenses.

## SECOND CLAIM
### (FORFEITURE AS PROCEEDS OF WIRE FRAUD OFFENSES UNDER 18 U.S.C. § 981(a)(1)(C))

32.   The Government incorporates by reference paragraphs 1 through 31 above as if fully set forth herein.

33.   18 U.S.C. § 1956(c)(7)(A) provides that the term "specified unlawful activity" includes "any act or activity constituting an offense listed in section 1961(1) of this title".

34.   Section 1961(1)(B) lists "any act which is indictable under any of the following provisions of title 18, United States

Code:  . . . section 1343 (relating to wire fraud). . . ."

35.   18 U.S.C. § 1343 provides that "[w]hoever, having devised or intending to devise any scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, transmits or causes to be transmitted by means of wire, radio, or television communication in interstate or foreign commerce, any writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice," shall be guilty of a felony offense.

36.   As set forth in the Indictment, LI FANGWEI committed and conspired to commit wire fraud when he used a network of front companies to conduct U.S. dollar transactions through financial institutions in the form of U.S.-based correspondent banks, in contravention of IEEPA and the WMD Sanctions Regulations imposed against him, by concealing the true nature of his involvement in the transaction from both the U.S.-based correspondent banks and the United States regulators, and caused millions of dollars to be wire transferred using a series of front companies, from outside the United States and through financial institutions located in the Southern District of New York and elsewhere, including the wire transfers set forth in paragraph 21, above.

37.   Accordingly, the Defendants in Rem are forfeitable under 18 U.S.C. § 981(a)(1)(C) as property constituting proceeds

traceable to violations of 18 U.S.C. § 1343 or conspiracies to commit such offenses.

### THIRD CLAIM
#### (FORFEITURE AS PROPERTY INVOLVED IN MONEY LAUNDERING UNDER 18 U.S.C. § 981(a)(1)(A))

38.   The Government incorporates by reference paragraphs 1 through 37 above as if fully set forth herein.

39.   Pursuant to 18 U.S.C. § 981(a)(1)(A), "[a]ny property, real or personal, involved in a transaction in violation of section 1956 [or] 1957 . . . of [title 18, relating to money laundering offenses], or any property traceable to such property," is subject to forfeiture to the Government.

40.   18 U.S.C. § 1956(a)(1) imposes a criminal penalty on any person who:

> knowing that the property involved in a financial transaction involves the proceeds of some form of unlawful activity, conducts or attempts to conduct such a financial transaction which in fact involves the proceeds of specified unlawful activity –
>
> (A)   (i)  with the intent to promote the carrying on of specified unlawful activity; or
>
> (ii)  with intent to engage in conduct constituting a violation of section 7201 or 7206 of the Internal Revenue Code of 1986; or
>
> (B)   knowing that the transaction is designed in whole or in part –
>
> (i)  to conceal or disguise the nature, the location, the source,

the ownership, or the control of
the proceeds of specified unlawful
activity; or

(ii)  to avoid a transaction
reporting requirement under State
or Federal law[.]

41.   Section 1956(a)(2) further imposes a criminal penalty
on any person who:

transports, transmits, or transfers, or
attempts to transport, transmit, or transfer
a monetary instrument or funds from a place
in the United States to or through a place
outside the United States or to a place in
the United States from or through a place
outside the United States –

(A)   with the intent to promote the carrying
on of specified unlawful activity; or

(B)   knowing that the monetary instrument or
funds involved in the transportation,
transmission, or transfer represent the
proceeds of some form of unlawful
activity and knowing that such
transportation, transmission, or
transfer is designed in whole or in
part –

(i)  to conceal or disguise the
nature, the location, the source,
the ownership, or the control of
the proceeds of specified unlawful
activity; or

(ii)  to avoid a transaction
reporting requirement under State
or Federal law[.]

42.   18 U.S.C. § 1957 imposes a criminal penalty on any
person who "knowingly engages or attempts to engage in a
monetary transaction [in the United States] in criminally

18

derived property of a value greater than $10,000 and is derived from specified unlawful activity." A "monetary transaction" includes the "deposit, withdrawal, transfer, or exchange, in or affecting interstate or foreign commerce, of funds or a monetary instrument . . . by, through, or to a financial institution." 18 U.S.C. § 1957(f)(1).

43. Pursuant to 18 U.S.C. § 1956(h), "[a]ny person who conspires to commit any offense defined in this section or section 1957 shall be subject to the same penalties as those prescribed for the offense the commission of which was the object of the conspiracy."

44. As noted in paragraphs 28 and 33-34, above, "specified unlawful activity" includes wire fraud and IEEPA violations.

45. The Defendants in Rem constitute property involved in money laundering transactions and attempted money laundering transactions in violation of Sections 1956 and 1957 and therefore are subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A).

REQUEST FOR RELIEF

WHEREFORE plaintiff, the United States of America, requests that judgment be entered as follows:

A.   Enter judgment against the Defendants in Rem, and in favor of the United States, on the first, second, and third claims alleged in the Complaint.

B.  Issue process to enforce the forfeiture of the
Defendants in Rem, requiring that all persons having
an interest in the Defendants in Rem be cited to
appear and show cause why the forfeiture should not be
decreed, and that this Court decree forfeiture of the
Defendants in Rem to the United States of America for
disposition according to law;

C.  Grant the Government such further relief as this Court
may deem just and proper, together with the costs and
disbursements in this action.

Dated: New York, New York       PREET BHARARA
       April 29, 2014           United States Attorney
                                Attorney for the United States of
                                America

                                _____
                                MICAH W. J. SMITH
                                PAUL M. MONTELEONI
                                Assistant United States Attorneys
                                One Saint Andrew's Plaza
                                New York, New York 10007
                                Telephone: (212) 637-2439/2219
                                Facsimile: (212) 637-0421
                                E-mail: micah.smith@usdoj.gov
                                        paul.monteleoni@usdoj.gov

**VERIFICATION**

STATE OF NEW YORK            )
COUNTY OF NEW YORK           :
SOUTHERN DISTRICT OF NEW YORK )

Steven Jefferson, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation, and as such has responsibility for the within action; that he has read the foregoing Verified Complaint and knows the contents thereof, and that the same is true to the best of his knowledge, information, and belief.

The sources of deponent's information and the ground of his belief are official records and files of the United States, information obtained directly by the deponent, and information obtained by other law enforcement officials and representatives during an investigation of alleged violations of Title 18 and Title 50, United States Code.

Steven Jefferson
Special Agent
Federal Bureau of Investigation

Sworn to before me this
29th day of April, 2014:

NOTARY PUBLIC

MARCO DASILVA
Notary Public, State of New York
No. 01DA6145603
Qualified in Nassau County
My Commission Expires _May 8, 2014_          21

# Attachment A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - -x

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA | : | SEALED |
|  |  | SUPERSEDING INDICTMENT |
| - v. - | : | S1 14 Cr. 144 |
| LI FANGWEI, | : |  |
| a/k/a "Li Fang Wei," |  |  |
| a/k/a "Fangwei Li," | : |  |
| a/k/a "Karl Lee," |  |  |
| a/k/a "David Li," | : |  |
| a/k/a "Sunny Bai," |  |  |
| a/k/a "F.W. Li," | : |  |
| a/k/a "Patric," |  |  |
| a/k/a "Song Dahai," | : |  |
| a/k/a "Charles Lee," |  |  |
| a/k/a "Charles Li," | : |  |
| a/k/a "Li Wei," |  |  |
| a/k/a "KL," | : |  |
|  |  |  |
| Defendant. | : |  |

- - - - - - - - - - - - - - - -x

## COUNT ONE
(Conspiracy to Violate IEEPA)

The Grand Jury charges:

## OVERVIEW

1.   LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li,"

a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W.

Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a

"Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant (hereinafter,

"LI FANGWEI"), is a national of the People's Republic of China.  LI

FANGWEI controls a large network of industrial companies based in

eastern China, one of which is LIMMT Economic and Trade Company, Ltd.

("LIMMT").

     2.   Over the years, LI FANGWEI's companies have done a great deal of business with Iran.   This business has included selling to Iranian entities various metallurgical goods and related components that are banned for transfer to Iran by, among others, the United Nations because the items are controlled by the Nuclear Supplier's Group (a multinational group that maintains "control lists," which identify nuclear-related dual-use equipment, material, and technology).   LI FANGWEI has been, among other things, a long-time supplier to Iran's Defense Industries Organization and Iran's Aerospace Industries Organization.   In addition, LI FANGWEI has been a principal contributor to Iran's ballistic missile program, through entities that have been sanctioned by the United States.

     3.   In light of his supply of closely controlled items to Iran, the United States has imposed targeted sanctions on both LI FANGWEI and LIMMT.

     4.   The United States Department of the Treasury's Office of Foreign Asset Controls ("OFAC") publicly added LIMMT (in 2006) and LI FANGWEI (in 2009) to its List of Specially Designated Nationals and Blocked Persons (the "SDN List").   By virtue of their inclusion on the SDN List, LI FANGWEI and LIMMT were effectively precluded from conducting any business within the United States without first obtaining a license or authorization from OFAC.   Neither LI FANGWEI

2

nor LIMMT has sought such a license or authorization.

     5.    The above-referenced restrictions have forced LI FANGWEI to operate much of his business covertly.  In response to United States sanctions, LI FANGWEI has built an outsized network of front companies – to conceal his continuing participation, and LIMMT's continuing participation, in sanctioned activities.  The front companies are listed in Exhibit A to this Indictment.  As shown in Exhibit A, many of those front companies have used the same address as LIMMT, or a close variant thereof.

     6.    The listed front companies have for years been used by LI FANGWEI to funnel money through the United States financial system and/or to conduct direct transactions with Iran.  Front companies controlled by LI FANGWEI have allowed LI FANGWEI and LIMMT illegally and covertly to move millions of dollars through United States banks.  These front company transactions were designed to evade the sanctions imposed on LI FANGWEI and LIMMT – and they have permitted LI FANGWEI to continue conducting business internationally, including with entities in Iran, despite United States sanctions.

     7.    During the period from 2006 through to the present, LI FANGWEI has used front companies to engage in more than 165 separate U.S. dollar transactions, with a total value in excess of approximately $8.5 million dollars.

RELEVANT STATUTES

8.   The International Emergency Economic Powers Act ("IEEPA"), Title 50, United States Code, Sections 1701-1706, authorized the President of the United States to impose economic sanctions in response to an unusual or extraordinary threat to the national security, foreign policy, or economy of the United States when the President declares a national emergency with respect to that threat.

9.   On November 14, 1994, the President issued Executive Order 12938, finding "that the proliferation of nuclear, biological, and chemical weapons ('weapons of mass destruction') and of the means of delivering such weapons, constitutes an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States, and [declaring] a national emergency to deal with that threat."

10.   Thereafter, on June 28, 2005, the President issued Executive Order 13382 to target proliferators of weapons of mass destruction ("WMDs") and their support networks and deny designated WMD proliferators access to the United States financial and commercial systems.  Pursuant to that authority, the Secretary of Treasury promulgated the "Weapons of Mass Destruction Proliferators Sanctions Regulations" (the "WMD Sanctions Regulations"), 31 C.F.R. § 544.201 et seq., which authorized OFAC to sanction individuals and

entities facilitating the proliferation of WMDs by placing such individuals or entities on the SDN List, 31 C.F.R. § 544.201(a)(2).

11. The WMD Sanctions Regulations prohibited transactions or dealings by any United States person or within the United States with individuals and entities who have been placed on the SDN list, except as authorized or licensed by OFAC, 31 C.F.R. § 544.201(b). The WMD Sanctions Regulations also prohibited any transaction by a United States person or within the United States that evades or avoids, or has the purpose of evading or avoiding, any of the prohibitions set forth in the WMD Sanctions Regulations, 31 C.F.R. § 544.205. Similarly, the WMD Sanctions Regulations and the SDN listing have the effect of preventing United States persons from providing any financial or other services to a person or entity on the SDN List, pursuant to 31 C.F.R. § 544.405.

12. In addition to the WMD Sanctions Regulations, on March 15, 1995, the President issued Executive Order 12957 finding that "the actions and policies of the Government of Iran constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States" and declaring "a national emergency to deal with that threat." Pursuant to that executive Order, which was expanded and continued by Executive Orders 12959, 13059, 13553, and 13357, OFAC has issued the Iranian Transactions and Sanctions Regulations ("ITSR," and collectively with the WMD

5

Sanctions Regulations the "OFAC Sanctions"), 31 C.F.R. § 560, which, among other things, prohibit the use of United States financial institutions to facilitate transactions with and/or provide services to Iran-based entities.

### THE CONSPIRACY SYSTEMATICALLY TO EVADE OFAC SANCTIONS AND VIOLATE IEEPA

13.   From at least in or about 2006, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, knowingly and willfully did combine, conspire, confederate, and agree together and with each other to violate, and to cause a violation of, licenses, orders, regulations, and prohibitions issued under the International Emergency Economic Powers Act, Title 50, United States Code, Sections 1701 to 1706, and Parts 544 and 560 of Title 31, Code of Federal Regulations.

14.   It was a part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, would and did evade and avoid, and have the purpose of evading and

avoiding, and would and did violate and attempt to violate, and cause a violation of, the prohibitions contained in Executive Order 13382 and regulations promulgated thereunder, including: (a) to evade and avoid the prohibitions and restrictions imposed by OFAC on LIMMT, LI FANGWEI, and several of LI FANGWEI's front companies as proliferators of weapons of mass destruction; (b) to make a contribution and provision of funds, goods, and services to and for the benefit of any individual and entity whose property and interests have been blocked as a proliferator of weapons of mass destruction by OFAC, namely LIMMT, LI FANGWEI, and their related front companies; and (c) to receive a contribution and provision of funds, goods, and services from any individual and entity whose property and interests have been blocked as a proliferator of weapons of mass destruction by OFAC, namely LIMMT, LI FANGWEI, and their related front companies, to wit, LI FANGWEI used aliases and fictitious business names to conceal the beneficiaries of electronic wire transfers of funds that passed through bank accounts in the United States, knowing that such beneficiaries had been identified as Specially Designated Nationals by OFAC in violation of Title 50, United States Code, Sections 1701 to 1706, and Title 31, Code of Federal Regulations, Sections 544.201 and 544.205.

15.    It was a further part and object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl

Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, would and did export, reexport, sell, and supply, and cause to be exported, reexported, sold, and supplied, directly and indirectly, from the United States to Iran, goods, technology, and services, to wit, LI FANGWEI caused electronic wire transfers of funds through United States financial institutions to facilitate the provision of goods and services to customers located in Iran, without obtaining the required approval of OFAC, in violation of Title 50, United States Code, Sections 1701 to 1706, and Title 31, Code of Federal Regulations, Sections 560.203 and 560.204.

### LI FANGWEI's Use of Front Companies to Deal Covertly with Iranian Entities

16. For many years, LI FANGWEI's companies openly conducted business with several Iran-based entities. However, after the United States publicly sanctioned LI FANGWEI and LIMMT, LI FANGWEI essentially has gone underground – continuing to deal with Iran, but now not directly through LIMMT, but rather through a wide variety of front companies.

17. For example, during late 2011, LI FANGWEI visited a manufacturing plant in China (the "Chinese Manufacturer") with several Iranians. The purpose of the visit was to inspect the facilities of the Chinese Manufacturer in connection with a

contemplated transaction involving machinery used to produce aramid fiber.[1]  LI FANGWEI entered into a contract in which the Chinese Manufacturer agreed to provide an aramid fiber production line to one of LI FANGWEI's front companies, Dalian Zenghua Trading Co., Ltd., in exchange for the equivalent of $644,734.  LI FANGWEI would then make arrangements to transport the aramid fiber production line to an Iran-based company ("Iranian Company-1").  After the contract between Dalian Zenghua Trading Co., Ltd., and the Chinese Manufacturer was signed, LI FANGWEI used a bank account previously associated with another one of his front companies, Karat Industry Co., Ltd., to transmit the down-payment for Iranian Company-1's aramid fiber production line to a bank account in the name of the Chinese Manufacturer.

18.  In a similar vein, during the period from December 2010, up to and including February 2013, LI FANGWEI used two separate front companies, Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation and Dalian Zhongchuang Char-White Co., Ltd., to send at least 23 separate shipments to Iran.  For example:

a.  In January 2010, LI FANGWEI used an account with an international courier (the "Courier") in the name of his front

---

1 Aramid fibers are used in, among other things, ballistic missiles and gas centrifuges used in uranium enrichment.  In 2010, the United Nations Security Council banned the transfer of certain items to Iran, including particular specifications of aramid "fibrous or filamentary materials."

company, Dalian Zhongchuang Char-White Co., Ltd., to send "samples for testing" to an Iran-based procurement agent ("Iranian Procurement Agent-A").   The invoice associated with the January 2010 shipment was issued by another one of LI FANGWEI's front companies, Ara Steel Mills Company.

       b.   In January, February, and October 2010, LI FANGWEI, used that same front company account with the Courier to send a "sample for testing" and other items to two different Iran-based procurement agents ("Iranian Procurement Agent-B" and "Iranian Procurement Agent-C," respectively).   The invoices associated with those shipments were issued in the name of three LI FANGWEI front companies: Ara Steel Mills Company, TA Industry Co, and Abo Trading Co., Ltd.

       c.   In September 2011, LI FANGWEI used a different account with the Courier, in the name of another one of his front companies, Sinotech (Dalian) Carbon & Graphite Manufacturing Corporation, to send additional "samples" to Iranian Procurement Agent-B.   The invoice associated with the September 2011 shipment was issued in the name of another LI FANGWEI front company, Sinotech Industry Co., Ltd.

       19.   Some additional examples of LI FANGWEI's recent dealings with Iran include:

       a.   In February 2010, LI FANGWEI sent Iranian

Procurement Agent-A two separate invoices addressed to Iranian Company-2, each of which reflected the sale of 20,000 kilograms of cold-drawn seamless steel pipes.  The invoices were issued in the name of one of LI FANGWEI's front companies, MMN Industry Corporation.

       b.   In January 2008, LI FANGWEI sent Iranian Procurement Agent-B an invoice addressed to Iranian Company-3 for the sale of 1,300 aluminum alloy tubes.  The invoice was issued in the name of one of LI FANGWEI's front companies, SC (Dalian) Industry & Trade Co., Ltd.

       c.   In June 2008, LI FANGWEI sent Iranian Procurement Agent-B an invoice for the sale of 24,500 kilograms of maraging steel rods to Iranian Company-4 – a special class of high-strength steel which can be used in the development of gas centrifuges for uranium enrichment.  The invoice was issued in the name of one of LI FANGWEI's front companies, SC (Dalian) Industry & Trade Co., Ltd.

<u>LI FANGWEI's Use of Front Companies to Funnel Commercial Transactions</u>
<u>Covertly – and Illegally – Through</u>
<u>United States Financial Institutions</u>

       20.   The WMD Sanctions Regulations imposed beginning in June 2006 made it difficult for LI FANGWEI to do business with international suppliers and customers through his principal company,

11

LIMMT.   This was because, once sanctioned by OFAC, neither LI FANGWEI nor LIMMT were generally permitted to engage in any commercial transactions with United States persons or entities – and were prohibited from using the United States financial system to conduct any transactions, including sending or receiving payment for goods.

21.   This latter limitation, on access to the United States banking system, had an especially powerful impact.   In the context of international commerce, contracts often specify that payments are to be made in United States currency.   In turn, U.S. dollar-denominated transactions are often "cleared" through banks in the United States.   Consistent with this practice, several of LI FANGWEI's international contracts called for payment in U.S. dollars and specified particular United States financial institutions located in New York.   Such transactions therefore had in the ordinary course to be cleared through "correspondent" banks in the United States.   But OFAC's designation of LIMMT and LI FANGWEI – and ultimately several of LI FANGWEI's front companies as well – prohibited LI FANGWEI or his companies from making use of the United States financial system.

22.   To evade this limitation, LI FANGWEI turned to front companies to conceal the role of LI FANGWEI or LIMMT in any given transaction.

23.   For example, in or about April 2009 – approximately

12

three days after he was designated by OFAC – LI FANGWEI sent an email to a long-time LIMMT customer, which stated: "Kindly be informed that please do NOT transfer the money of payment to our last account no., which is not used any more from today , we shall inform you our new account no to receive the payment later."  Subsequent to this email, LI FANGWEI engaged in additional commercial transactions using U.S. dollars with that customer using the names of other of LI FANGWEI's front companies.

24.  To cite another example, in his dealings with a single customer during the period from 2007 up to and including 2012, LI FANGWEI used five different front companies – Wealthy Ocean Enterprises Ltd., Ansi Metallurgy Industry Co., Ltd., ABC Metallurgy Limited, Sinotech Industry Co., Ltd., and Success Move Limited.

25.  LI FANGWEI made especially extensive use of using one of his front companies, Sinotech Metallurgy & Minmetals Co., Ltd. Using this particular front company, LI FANGWEI worked to evade sanctions by engaging in at least 35 separate U.S.-dollar transactions, the proceeds of which were transferred through United States financial institutions.  Those U.S.-dollar transactions totaled more than $2,400,000 in United States currency.

26.  Over time, various entities began to suspect that Sino Metallurgy and Minmetals Industry Co., Ltd. was a front company being used by LI FANGWEI.  But when U.S. banks declined to facilitate

payments being made to Sino Metallurgy and Minmetals Industry Co., Ltd., LI FANGWEI simply directed companies that LIMMT had contracted with to send funds through *other* U.S. banks – and to *other* LI FANGWEI front companies, including Blue Sky Industry Corporation; Wealthy Ocean Enterprises Ltd.; Sinotech Industry Co., Ltd.; and MTTO Industry & Trade Limited.  Using this secondary set of front companies, LI FANGWEI was able to cause additional millions of dollars, and scores of electronic wire transfers, to be illegally pushed through the United States banking system.

27.  The illegal methods described above have also been used to facilitate transactions with Iranian entities.  Thus, for example, during 2010 and 2011, LI FANGWEI engaged in at least four separate transactions with a particular Iran-based company ("Iranian Company-5").  The contracts for each of those four transactions were denominated in U.S. dollars, and LI FANGWEI directed Iranian Company-5 to remit payment for these transactions to two different front companies – Sinotech Industry Co., Ltd. and Success Move Limited.  In this manner, LI FANGWEI successfully used the U.S. financial system in order to obtain goods for Iran, in contravention of both the WMD Sanctions Regulations and the ITSR, and to cause the transmission of more than $208,300 in United States currency from Iranian Company-5, through multiple New York banks, to a Chinese bank account ultimately controlled by LI FANGWEI.  Moreover, recognizing

14

that an Iranian entity would be prohibited from using the U.S. banking system, LI FANGWEI agreed that the payments from Iranian Company-5 would appear to originate from a so-called "exchange house," *i.e.*, an entity operating outside of Iran on behalf of an Iran-based entity, thereby making it appear as if the wire transfer had come from a customer and a bank located in a country other than Iran.

## OVERT ACTS

28. In furtherance of the conspiracy and to effect the illegal objects thereof, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, committed the following overt acts in the Southern District of New York and elsewhere:

a. On or about February 7, 2011, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $55,605.00 to be transferred from Iranian Company-5 - using an "exchange house" - through a particular U.S.-based financial institution, which was located in New York, New York ("Financial Instition-1") to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Sinotech Industry Co., Ltd., to facilitate the provision of goods to Iranian Company-5.

b.    On or about August 25, 2011, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $52,401.91, to be transferred through a particular U.S.-based financial institution, which was located in New York, New York ("Financial Instition-2"), to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Success Move Limited.

c.    On or about April 2, 2009, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $52,443.63, to be transferred through a particular U.S.-based financial institution, which was located in New York, New York ("Financial Instition-3"), to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of ABC Metallurgy Limited.

d.    On or about August 9, 2010, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $31,914.00 to be transferred from Iranian Company-5 – using an "exchange house" –through Financial Institution-4 to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Sinotech Industry Co., Ltd., to facilitate the provision of goods to Iranian Customer-5.

e.    On or about March 7, 2011, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $16,062.50 to be transferred through Financial Institution-1 from

16

a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Success Move Limited into a bank account controlled by China North Chemical Industries Co., Ltd.

     f.    On or about July 26, 2011, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $60,725.00 to be transferred from Iranian Company-5 – using an "exchange house" –through Financial Institution-3 to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Success Move Limited, to facilitate the provision of goods to Iranian Customer-5.

     g.    On or about October 11, 2011, LI FANGWEI caused a contract in the name of MTTO Industry & Trade Limited to be sent to a' U.S.-based company ("U.S. Company-1").

     h.    In or about December 2011, LI FANGWEI caused a company in the United States ("U.S. Company-2") to issue a price quotation for 5 kilograms of Hafnium Diboride ($HfB_2$) 325 Mesh powder.

     i.    In or about January 2012, LI FANGWEI caused approximately 20 metric tons of graphite to be sold to U.S. Company-1 and imported into the United States.

     j.    In or about February 2012, LI FANGWEI caused over 600 graphite rods to be sold to U.S. Company-1 and imported into the United States.

k.   In or about February 2012, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $71,374.18 to be transferred from U.S. Company-1 through a particular U.S.-based financial institution, which was located in New York, New York ("Financial Instition-6") to a bank account used by LI FANGWEI in the name of "MTTO Industry Trade Ltd."

l.   On or about February 16, 2012, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $34,644.27 to be transferred through Financial Institution-3 to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of "Karat Industry Co."

m.   In or about January 2013, LI FANGWEI caused a company located in the United Arab Emirates to issue an invoice to Sinotech (Dalian) Carbon and Graphite Manufacturing Corporation for a purchase of graphite electrodes in exchange for $1,145,000.00 in United States currency.

n.   On or about February 19, 2013, LI FANGWEI caused an electronic wire transfer of funds in the amount of approximately $400,000.00 to be transferred through a particular U.S.-based financial institution, which was located in New York, New York ("Financial Institution-7"), to a bank account controlled by LI FANGWEI in the People's Republic of China in the name of Tereal Industry and Trade Limited.

18

o.    During the period from 2010 to 2013, LI FANGWEI repeatedly traveled to Iran for extended periods of time to confer with Iranian individuals and/or entities for business-related purposes.

(Title 50, United States Code, Section 1705(a) and (c).)

## COUNT TWO
(First Substantive IEEPA Violation)

The Grand Jury further charges:

29.   In or about January 2012, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, willfully and knowingly, did engage in transactions that evaded and avoided, and had the purpose of evading and avoiding, the prohibitions contained in Executive Order 13382 and regulations promulgated thereunder imposed by OFAC on LIMMT, LI FANGWEI, and several of LI FANGWEI's front companies as proliferators of weapons of mass destruction, to wit, LI FANGWEI caused approximately 20 metric tons of graphite to be sold to U.S. Company-1 and imported into the United States, without prior authorization from OFAC.

(Title 50, United States Code, Section 1705(a) and (c); Title 18, United States Code, Section 2; Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.)

19

## COUNT THREE
(Substantive IEEPA Violation)

The Grand Jury further charges:

30.    In or about February 2012, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, willfully and knowingly, did engage in transactions that evaded and avoided, and had the purpose of evading and avoiding, the prohibitions contained in Executive Order 13382 and regulations promulgated thereunder imposed by OFAC on LIMMT, LI FANGWEI, and several of LI FANGWEI's front companies as proliferators of weapons

of mass destruction, to wit, LI FANGWEI caused over 600 graphite rods to be sold to U.S. Company-1 and imported into the United States.

(Title 50, United States Code, Section 1705(a) and (c); Title 18, United States Code, Section 2; Title 31, Code of Federal Regulations, Parts 544.201 and 544.205.)

COUNT FOUR
(The Money Laundering Conspiracy)

The Grand Jury further charges:

31.   The allegations set forth in paragraphs 1 through 12, and paragraphs 16 through 28, are incorporated by reference herein as if set forth here in full.

32.   From at least in or about 2006, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, willfully and knowingly did combine, conspire, confederate, and agree together and with each other to violate Title 18, United States Code, Sections 1956(a)(2)(A) and 1957.

33.   It was a part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a

21

"Li Wei," a/k/a "KL," the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, would and did transport, transmit, and transfer, and attempt to transport, transmit, and transfer, monetary instruments and funds to places in the United States from and through places outside the United States, with the intent to promote the carrying on of specified unlawful activity, to wit, illegal transactions with individuals and entities designated as prohibited persons on the SDN List by OFAC in violation of Title 50, United States Code, Section 1705 and regulations promulgated thereunder, in violation of Section 1956(a)(2)(A) of Title 18, United States Code.

34. It was a further part and object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, in an offense involving and affecting interstate and foreign commerce, would and did knowingly engage and attempt to engage in a monetary transaction in criminally derived property of a value greater than $10,000 and is derived from specified unlawful activity, to wit, the illegal use of U.S. financial institutions to provide goods and services to customers located in Iran, in violation of Title 50, United States Code, Section 1705 and regulations promulgated

22

thereunder, in violation of Section 1957 of Title 18, United States Code.

**OVERT ACTS**

35.   In furtherance of the conspiracy and to effect the illegal objects thereof, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, committed the overt acts described in paragraph 28 above, and incorporated by reference herein as if set forth here in full.

(Title 18, United States Code, Section 1956(h).)

**COUNT FIVE**
(The Wire and Bank Fraud Conspiracies)

The Grand Jury further charges:

36.   The allegations set forth in paragraphs 1 through 12 and paragraphs 16 through 28 are incorporated by reference herein as if set forth here in full.

37.   From at least in or about 2006, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant,

23

and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to violate Sections 1343 and 1344 of Title 18, United States Code.

38.   It was a part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme in which LI FANGWEI used a network of front companies to conduct U.S. dollar transactions through financial institutions in the form of U.S.-based correspondent banks, in contravention of IEEPA and the WMD Sanctions Regulations imposed against him, by concealing the true nature of his involvement in the transaction from both the U.S.-based correspondent banks and the United States regulators, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, LI FANGWEI caused more than $8.5 million to be

transferred using a series of front companies as described in the table in Exhibit B, from outside the United States and through financial institutions located in the Southern District of New York and elsewhere, in violation of Title 18, United States Code, Section 1343.

39.   It was a further part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme in which LI FANGWEI entered into multiple transactions with U.S. Company-1, in contravention of IEEPA and the WMD Sanctions Regulations imposed against him, by concealing the true nature of his involvement in the transaction from both U.S. Company-1 and the United States regulators, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, LI FANGWEI caused approximately $128,978.28 to be transferred using front companies, from inside the

United States to outside of the United States, through banks located in the Southern District of New York and elsewhere, in violation of Title 18, United States Code, Section 1343.

40. It was a further part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme in which LI FANGWEI engaged with Iranian Company-5 in commercial transactions through United States based financial institutions in contravention of IEEPA and the ITSR, by concealing the true nature of Iran Company-5's and LI FANGWEI's involvement in the transactions from both the United States financial institutions and the United States regulators, would and did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, LI FANGWEI caused approximately five separate wire transfers using front companies, from inside the United States to outside of the United States, through banks located in the

26

Southern District of New York and elsewhere, in violation of Title 18, United States Code, Section 1343.

41.   It was a further part and an object of the conspiracy that LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, willfully and knowingly, did execute and attempt to execute a scheme and artifice to defraud financial institutions, the deposits of which were then insured by the Federal Deposit Insurance Corporation, and to obtain the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, such financial institutions by means of false and fraudulent pretenses, representations, and promises, to wit, LI FANGWEI used a network of front companies to conduct U.S. dollar transactions through financial institutions in the form of U.S.-based correspondent banks, in contravention of IEEPA and the WMD Sanctions Regulations imposed against him, by concealing the true nature of his involvement in the transaction from both the financial institutions, in violation of Title 18, United States Code, Section 1344.

<u>OVERT ACTS</u>

42.   In furtherance of the conspiracy and to effect the

27

illegal objects thereof, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, and others known and unknown, committed the overt acts described in paragraph 28 above, and incorporated by reference herein as if set forth here in full.

(Title 18, United States Code, Section 1349.)

## COUNT SIX
(First Substantive Count of Wire Fraud)

The Grand Jury further charges:

43.   From at least in or about 2006, up to and including the date of the filing of this Indictment, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and promises, to wit, a scheme in which LI FANGWEI used aliases and front companies to conduct transactions in United States currency through U.S.-based financial institutions, in contravention of IEEPA and the WMD Sanctions imposed against him, by concealing the true nature of

28

his involvement in the transaction from both the financial institutions and United States regulators, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, on the dates set forth in Exhibit B, LI FANGWEI, acting through a series of front companies, made and caused to be made the electronic funds transfers described in the table in Exhibit B, which transfers were cleared through banks located in New York, New York, to bank accounts controlled by LI FANGWEI and/or LIMMT in China.

(Title 18, United States Code, Sections 1343 and 2.)

### COUNT SEVEN
(Second Substantive Count of Wire Fraud)

The Grand Jury further charges:

44.   From at least in or about October 2011 up to and including in or about April 2012, in the Southern District of New York and elsewhere, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations and

29

promises, to wit, a scheme in which LI FANGWEI used the MTTO Industry & Trade Limited front company to collect approximately $128,978.28 in United States currency in payments from the U.S. Company in connection with two separate sales contracts, in contravention of IEEPA and the WMD Sanctions Regulations imposed against him, by concealing the true nature of his involvement in the transaction from both the U.S. Company and United States regulators, did transmit and cause to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purpose of executing such scheme and artifice, to wit, from October 2011 through April 2012, LI FANGWEI caused the U.S. Company to send at least five separate electronic wire transfers of funds through financial institutions located in the Southern District of New York and elsewhere in the United States.

(Title 18, United States Code, Sections 1343 and 2.)

### FIRST FORFEITURE ALLEGATION

45.  As the result of committing the IEEPA offenses in violation of Title 50, United States Code, Sections 1701 to 1706, alleged in Counts One through Three of this Indictment, and the wire fraud offenses in violation of Title 18, United States Code, Sections 1343 and 1349, alleged in Counts Five and Six of this Indictment, LI FANGWEI, a/k/a "Li Fang Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee,"

a/k/a "David Li," a/k/a "Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric,"

a/k/a "Song Dahai," a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a

"Li Wei," a/k/a "KL," the defendant, shall forfeit to the United

States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461,

all property, real and personal, that constitutes or is derived from

proceeds traceable to the commission of the offenses, including but

not limited to the following:

       a.    At least $8.5 million in United States currency,

in that such sum in aggregate is property representing the amount

of proceeds obtained as a result of the offenses.

<u>Substitute Assets Provision</u>

      46.   If any of the property described above as being

subject to forfeiture, as a result of any act or omission of the

defendant:

       a.    cannot be located upon the exercise of due

          diligence;

       b.    has been transferred or sold to, or

          deposited with, a third party;

       c.    has been placed beyond the jurisdiction of the

          court;

       d.    has been substantially diminished in

          value; or

e.   has been commingled with other

property which cannot be divided

without difficulty;

it is the intention of the United States, pursuant to Title 21, United

States Code, Section 853(p), to seek forfeiture of any other property

of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 981;
Title 21, United States Code, Section 853; and
Title 28, United States Code, Section 2461.)

## SECOND FORFEITURE ALLEGATION

47.   As the result of committing the money laundering

offense in violation of Title 18, United States Code, Section 1956,

alleged in Count Four of this Indictment, LI FANGWEI, a/k/a "Li Fang

Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a

"Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai,"

a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL,"

the defendant, shall forfeit to the United States, pursuant to 18

U.S.C. § 982, all property, real and personal, involved in the money

laundering offense and all property traceable to such property,

including but not limited to the following:

a.   At least $8.5 million in United States currency,

in that such sum in aggregate is property which was involved in the

money laundering offense or is traceable to such property.

32

<u>Substitute Assets Provision</u>

48.   If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendant:

a.   cannot be located upon the exercise of due diligence;

b.   has been transferred or sold to, or deposited with, a third party;

c.   has been placed beyond the jurisdiction of the court;

d.   has been substantially diminished in value; or

e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), to seek forfeiture of any other property of the defendant up to the value of the forfeitable property.

(Title 18, United States Code, Section 982.)

<u>THIRD FORFEITURE ALLEGATION</u>

49.   As the result of committing the wire fraud offense in violation of Title 18, United States Code, Sections 1343 and 2, alleged in Count Seven of this Indictment, LI FANGWEI, a/k/a "Li Fang

33

Wei," a/k/a "Fangwei Li," a/k/a "Karl Lee," a/k/a "David Li," a/k/a
"Sunny Bai," a/k/a "F.W. Li," a/k/a "Patric," a/k/a "Song Dahai,"
a/k/a "Charles Lee," a/k/a "Charles Li," a/k/a "Li Wei," a/k/a "KL,"
the defendant, shall forfeit to the United States, pursuant to 18
U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461, all property, real and
personal, that constitutes or is derived from proceeds traceable to
the commission of the offense, including but not limited to the
following:

    a.   At least $128,978.28 in United States currency,
in that such sum in aggregate is property which was involved in the
offense charged in Count Seven of this Indictment, or is traceable
to such property.

### Substitute Assets Provision

    50.  If any of the property described above as being
subject to forfeiture, as a result of any act or omission of the
defendant:

    a.   cannot be located upon the exercise of due
        diligence;

    b.   has been transferred or sold to, or
        deposited with, a third party;

34

      c.     has been placed beyond the jurisdiction of the

               court;

      d.     has been substantially diminished in

               value; or

      e.     has been commingled with other

               property which cannot be divided

               without difficulty;

it is the intention of the United States, pursuant to Title 18, United

States Code, Section 982(b), to seek forfeiture of any other property

of the defendant up to the value of the forfeitable property.

      (Title 18, United States Code, Section 982.)

_____
FOREPERSON

_____
PREET BHARARA
United States Attorney

35

EXHIBIT A

| FRONT COMPANY | ADDRESS | APPROXIMATE DATES USED | OFAC DESIGNATED |
|---|---|---|---|
| ABC METALLURGY LIMITED | No. 190 Changjiang Road, Dalian, China | 2008 - 2009 | N/A |
| ABO TRADING CO., LTD | China | 2010 - Present | N/A |
| ANSI METALLURGY INDUSTRY CO., LTD. | No. 100 Zhongshan Road, Dalian, China | 2007 - 2008 | 04/07/2009 |
| ARA STEEL MILLS COMPANY | China | 2010 - Present | N/A |
| BLUE SKY INDUSTRY CORPORATION | N/A | 2007 | 04/07/2009 |
| DALIAN CARBON CO. LTD. | No. 08 F25 Yuexiu Manison, Xigang District, Dalian, China | 2006 - Present | 04/07/2009 |
| DALIAN SUNNY INDUSTRY & TRADE CO., LTD. | No. 210 Bayi Road, Dalian, China | 2007 | 04/07/2009 |
| DALIAN ZENGHUA TRADING CO., LTD. | Dalian, China | 2011 - Present | N/A |
| DALIAN ZHONGCHUANG CHAR-WHITE CO., LTD. | Room 2501 Yuexiu Building, No. 82 Xinkai Road, Dalian, China | 2010 - 2011 | N/A |
| KARAT INDUSTRY CO., LTD. | No. 110 Baiyun St, Dalian, Liaoning, China | 2012 - Present | N/A |

A-1

| FRONT COMPANY | ADDRESS | APPROXIMATE DATES USED | OFAC DESIGNATED |
|---|---|---|---|
| LIAONING INDUSTRY & TRADE CO., LTD. | N/A | 2007 - 2008 | 04/07/2009 |
| LIMMT (DALIAN FTZ) METALLURGY AND MINERALS CO., LTD., | 2501-2508 Yuexiu Mansion, No. 82 Xinkai Road, Dalian, China | 1998 - 2008 | 06/13/2006 |
| LIMMT (DALIAN FTZ) MINMETALS AND METALLURGY CO., LTD. | 2501-2508 Yuexiu Mansion, No. 82 Xinkai Road, Dalian, China | 1998 - 2008 | 06/13/2006 |
| LIMMT (DALIAN) METALLURGY AND MINERALS CO., LTD. | 2501-2508 Yuexiu Mansion, No. 82 Xinkai Road, Dalian, China | 1998 - 2008 | 06/13/2006 |
| LIMMT ECONOMIC AND TRADE COMPANY., LTD. | 2501-2508 Yuexiu Mansion, No. 82 Xinkai Road, Dalian, China | 1998 - 2008 | 06/13/2006 |
| MMN INDUSTRY CORPORATION | 899 Shenhe Road, Shenyang, Liaoning, China | 2010 - Present | N/A |
| MTTO INDUSTRY & TRADE LIMITED | No. 9 Hongji street, Xi Gang District, Dalian City, China | 2011 - Present | N/A |
| SC (DALIAN) INDUSTRY & TRADE CO., LTD. | No. 188 Zhongshan Road, Dalian, China | 2008 | 04/07/2009 |
| SINO METALLURGY AND MINMETALS INDUSTRY CO., LTD. | No. 8 F25 Yuexiu Building Xigang District, Dalian, China | 2007 | 04/07/2009 |
| SINOTECH (DALIAN) CARBON & GRAPHITE MANUFACTURING CORPORATION | 2501-2508 Yuexiu Mansion, No. 82 Xinkai Road, Dalian, China | 2011 - Present | N/A |

A-2

| FRONT COMPANY | ADDRESS | APPROXIMATE DATES USED | OFAC DESIGNATED |
|---|---|---|---|
| SINOTECH INDUSTRY CO., LTD. | No. 190 Changjiang Road, Dalian City, China | 2009 - Present | N/A |
| SUCCESS MOVE LIMITED | No. 1109 Zhongshan Road, Dalian, China | 2011 - Present | N/A |
| SUMMIT INDUSTRY CORPORATION | Xinkai Road, Xigang District, Dalian, China | 2006 - 2009 | N/A |
| TA INDUSTRY CO | China | 2010 - Present | N/A |
| TEREAL INDUSTRY & TRADE LIMITED | No. 9 Hongji street, Xi Gang District, Dalian City, China | 2013 - Present | N/A |
| WEALTHY OCEAN ENTERPRISES LTD. | No 08 F25 Yuexiu Mansion, Xigang District, Dalian, China | 2007 | 04/07/2009 |

A-3

EXHIBIT B

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 1. | 12/6/2006 | $27,838.54 | Beneficiary | Sunny Minerals Company Limited | Financial Institution-5 |
| 2. | 12/28/2006 | $28,637.25 | Beneficiary | Sunny Minerals Company Limited | Financial Institution-5 |
| 3. | 1/2/2007 | $28,770.00 | Beneficiary | Wealthy Ocean Enterprises LTD | Financial Institution-2 |
| 4. | 1/16/2007 | $136,134.05 | Beneficiary | N/A | Financial Institution-1 |
| 5. | 1/18/2007 | $109,057.91 | Beneficiary | N/A | Financial Institution-1 |
| 6. | 2/9/2007 | $25,520.11 | Originator | Dalian Sunny Industry and Trade | Financial Institution-4 |
| 7. | 2/23/2007 | $31,050.65 | Beneficiary | Wealthy Ocean Enterprises LTD | Financial Institution-5 |
| 8. | 2/28/2007 | $32,429.25 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 9. | 3/9/2007 | $9,595.00 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 10. | 3/19/2007 | $31,282.15 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 11. | 3/21/2007 | $15,000.00 | Originator | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 12. | 3/23/2007 | $13,872.38 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-3 |
| 13. | 3/28/2007 | $1,387.24 | Originator | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 14. | 3/28/2007 | $21,095.00 | Both | Sino Metallurgy and Minmetals (Originator)  Wealthy Ocean Enterprises Ltd (Beneficiary) | Financial Institution-1 |
| 15. | 3/29/2007 | $65,560.00 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 16. | 4/18/2007 | $65,560.00 | Beneficiary | Sino Metallurgy & Minmetals | Financial Institution-1 |
| 17. | 4/18/2007 | $29,110.99 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-5 |
| 18. | 4/26/2007 | $28,045.40 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-5 |
| 19. | 5/2/2007 | $36,224.50 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 20. | 5/9/2007 | $78,870.00 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 21. | 5/22/2007 | $7,221.50 | Originator | Sino Metallurgy & Minmetals | Financial Institution-1 |
| 22. | 5/24/2007 | $40,251.35 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 23. | 5/29/2007 | $38,564.57 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 24. | 6/22/2007 | $31,283.00 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 25. | 6/26/2007 | $28,494.20 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-5 |
| 26. | 7/2/2007 | $118,106.59 | Beneficiary | Wealthy Ocean Enterprises | Financial Institution-1 |
| 27. | 7/2/2007 | $24,137.28 | Beneficiary | Wealthy Ocean Enterprises | Financial Institution-3 |
| 28. | 7/5/2007 | $28,494.20 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-5 |
| 29. | 7/17/2007 | $202,630.00 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 30. | 7/17/2007 | $26,277.82 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 31. | 7/30/2007 | $48,107.47 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 32. | 7/31/2007 | $29,295.47 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-3 |
| 33. | 8/6/2007 | $9,027.29 | Originator | Wealthy Ocean Enterprises Ltd | Financial Institution-1 |
| 34. | 8/6/2007 | $32,200.00 | Originator | Wealthy Ocean Enterprises Ltd | Financial Institution-1 |
| 35. | 8/7/2007 | $50,522.94 | Originator | Wealthy Ocean Enterprises Ltd | Financial Institution-1 |
| 36. | 8/8/2007 | $222,900.00 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 37. | 8/10/2007 | $82,919.02 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 38. | 8/13/2007 | $83,750.00 | Originator | Wealthy Ocean Enterprises Ltd | Financial Institution-1 |
| 39. | 8/15/2007 | $24,414.24 | Originator | Sino Metallurgy and Minmetals | Financial Institution-1 |
| 40. | 8/28/2007 | $71,647.20 | Originator | Wealthy Ocean Enterprises Ltd | Financial Institution-1 |
| 41. | 8/29/2007 | $13,872.37 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-3 |

B-2

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 42. | 8/29/2007 | $4,452.00 | Originator | Sino Metallurgy and Minmetals | Financial Institution-4 |
| 43. | 9/6/2007 | $30,623.35 | Beneficiary | Sino Metallurgy and Minmetals | Financial Institution-6 |
| 44. | 9/14/2007 | $29,662.38 | Beneficiary | Wealthy Ocean Enterprises Ltd | Financial Institution-3 |
| 45. | 10/3/2007 | $92,532.00 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-1 |
| 46. | 10/3/2007 | $33,340.62 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 47. | 10/24/2007 | $30,594.55 | Beneficiary | Blue Sky Industry Corporation | Financial Institution-2 |
| 48. | 10/30/2007 | $32,035.95 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 49. | 11/5/2007 | $46,928.20 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 50. | 11/7/2007 | $30,070.66 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 51. | 11/29/2007 | $50,400.00 | Originator | ABC Metallurgy Limited | Financial Institution-1 |
| 52. | 12/4/2007 | $9,235.20 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 53. | 12/20/2007 | $34,749.60 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 54. | 1/11/2008 | $31,649.31 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 55. | 1/18/2008 | $32,194.78 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 56. | 2/27/2008 | $25,560.00 | Originator | Summit Industry Corp | Financial Institution-4 |
| 57. | 3/6/2008 | $29,912.99 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 58. | 3/19/2008 | $34,830.76 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 59. | 4/2/2008 | $39,672.76 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 60. | 4/8/2008 | $12,329.91 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 61. | 4/10/2008 | $41,920.60 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 62. | 4/25/2008 | $38,186.23 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 63. | 5/2/2008 | $29,520.00 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |

B-3

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 64. | 5/28/2008 | $30,812.45 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 65. | 6/16/2008 | $33,197.01 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 66. | 7/16/2008 | $45,350.81 | Beneficiary | Ansi Metallurgy Industry Co Ltd | Financial Institution-3 |
| 67. | 7/31/2008 | $8,039.90 | Originator | ABC Metallurgy Limited | Financial Institution-1 |
| 68. | 7/31/2008 | $91,554.32 | Originator | ABC Metallurgy Limited | Financial Institution-1 |
| 69. | 8/7/2008 | $45,333.82 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 70. | 8/28/2008 | $43,500.00 | Beneficiary | ABC Metallurgy Limited | Financial Institution-1 |
| 71. | 9/19/2008 | $2,175.00 | Originator | Summit Industry Corporation | Financial Institution-1 |
| 72. | 9/26/2008 | $59,121.37 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 73. | 11/17/2008 | $135,056.64 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 74. | 1/8/2009 | $67,445.30 | Beneficiary | Summit Industry Corporation | Financial Institution-1 |
| 75. | 1/14/2009 | $68,964.90 | Beneficiary | Summit Industry Corporation | Financial Institution-1 |
| 76. | 1/14/2009 | $116,211.10 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 77. | 1/20/2009 | $34,814.80 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 78. | 4/2/2009 | $52,443.63 | Beneficiary | ABC Metallurgy Limited | Financial Institution-3 |
| 79. | 4/28/2009 | $52,496.64 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-3 |
| 80. | 6/8/2009 | $99,617.50 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 81. | 6/22/2009 | $12,093.80 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-1 |
| 82. | 10/30/2009 | $56,857.08 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 83. | 11/7/2009 | $47,517.50 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-1 |
| 84. | 12/2/2009 | $44,224.03 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 85. | 3/3/2010 | $48,004.08 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 86. | 3/17/2010 | $46,069.65 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 87. | 3/29/2010 | $42,785.10 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 88. | 8/9/2010 | $31,914.00 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-4 |
| 89. | 8/19/2010 | $53,096.15 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-2 |
| 90. | 9/8/2010 | $47,688.21 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 91. | 12/8/2010 | $56,413.70 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-2 |
| 92. | 12/8/2010 | $33,465.00 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 93. | 2/7/2011 | $55,605.00 | Beneficiary | Sinotech Industry Co., Ltd. | Financial Institution-1 |
| 94. | 3/1/2011 | $500.00 | Originator | Success Move Limited | Financial Institution-1 |
| 95. | 3/7/2011 | $16,062.50 | Originator | Success Move Limited | Financial Institution-1 |
| 96. | 5/11/2011 | $2,580.00 | Originator | Success Move Limited | Financial Institution-1 |
| 97. | 6/1/2011 | $52,941.41 | Beneficiary | Sinotech Industry Co | Financial Institution-3 |
| 98. | 7/25/2011 | $63,573.06 | Beneficiary | Success Move Limited | Financial Institution-2 |
| 99. | 7/26/2011 | $60,725.00 | Beneficiary | Success Move | Financial Institution-3 |
| 100. | 8/25/2011 | $52,401.91 | Beneficiary | Success Move Limited | Financial Institution-2 |
| 101. | 10/11/2011 | $8,440.00 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-6 |
| 102. | 12/19/2011 | $4,328.00 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-6 |
| 103. | 12/27/2011 | $60,100.00 | Beneficiary | Success Move | Financial Institution-3 |
| 104. | 12/28/2011 | $1,840.00 | Originator | Success Move Limited | Financial Institution-2 |
| 105. | 12/29/2011 | $33,456.50 | Originator | Success Move Limited | Financial Institution-2 |
| 106. | 1/9/2012 | $500.00 | Originator | Success Move Limited | Financial Institution-2 |
| 107. | 1/12/2012 | $32,677.00 | Beneficiary | MTTO Industry and Trade Limited | Financial Institution-1 |

B-5

| | Date | Amount | Originator or Beneficiary | Front Company Used | Financial Institution |
|---|---|---|---|---|---|
| 108. | 1/17/2012 | $2,760.00 | Originator | Success Move Limited | Financial Institution-1 |
| 109. | 1/17/2012 | $142.00 | Beneficiary | MTTO Industry and Trade Limited | Financial Institution-2 |
| 110. | 1/17/2012 | $2,760.00 | Originator | Success Move Limited | Financial Institution-1 |
| 111. | 1/31/2012 | $100.00 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-2 |
| 112. | 2/9/2012 | $71,374.18 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-6 |
| 113. | 2/16/2012 | $34,644.27 | Beneficiary | Karat Industry Co | Financial Institution-3 |
| 114. | 3/6/2012 | $228,909.30 | Beneficiary | Success Move | Financial Institution-3 |
| 115. | 3/19/2012 | $34,201.32 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-6 |
| 116. | 4/24/2012 | $10,634.78 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-6 |
| 117. | 9/12/2012 | $49,610.07 | Beneficiary | Success Move | Financial Institution-3 |
| 118. | 10/1/2012 | $973.00 | Beneficiary | MTTO Industry and Trade Ltd | Financial Institution-2 |
| 119. | 11/23/2012 | $9,980.00 | Beneficiary | MTTO Industry and Trade Limited | Financial Institution-1 |
| 120. | 02/19/2013 | $400,000.00 | Beneficiary | Tereal Industry and Trade Limited | Financial Institution-7 |
| 121. | 3/15/2013 | $16,330.00 | Beneficiary | Karat Industry Co | Financial Institution-3 |
| 122. | 5/17/2013 | $488.00 | Both | Success Move Limited (Beneficiary) Tereal Industry & Trade Limited (Originator) | Financial Institution-1 |
| 123. | 5/23/2013 | $28,988.00 | Both | Success Move Limited (Beneficiary) Tereal Industry & Trade Limited (Originator) | Financial Institution-1 |
| 124. | 5/29/2013 | $28,910.00 | Originator | Success Move Limited | Financial Institution-2 |

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

- v -

LI FANGWEI,
     a/k/a "Li Fang Wei,"
     a/k/a "Fangwei Li,"
     a/k/a "Karl Lee,"
     a/k/a "David Li,"
     a/k/a "Sunny Bai,"
     a/k/a "F.W. Li,"
     a/k/a "Patric,"
     a/k/a "Song Dahai,"
     a/k/a "Charles Lee,"
     a/k/a "Charles Li,"
     a/k/a "Li Wei,"
     a/k/a "KL,"

               Defendant.

SEALED SUPERSEDING
INDICTMENT

S1 14 Cr. 144

(Title 18, United States Code, Sections 2,
1343, 1344, 1349, 1956, 1957; Title 50,
United States Code Sections 1705(a) and
(c); Title 31, Code of Federal Regulations,
Parts 544.201, 544.205, 560.203, 560.204.)

              PREET BHARARA
         United States Attorney.

A TRUE BILL

              Foreperson.